Lucy A. Roland, Respondent, v. William Beshears *et al.*, Executors of the Estate of Robert A. Beshears, Deceased, Appellants.

St. Louis Court of Appeals, May 9, 1893.

Practice, Trial: REOPENING CASE AFTER SUBMISSION. The right to permit a plaintiff, after the technical submission of a cause, to reopen it for the purpose of offering additional testimony rests in the sound discretion of the trial court; but care should be taken to prevent the order for the reopening of the case from operating unfairly towards the defendant.

*Appeal from the Ralls Circuit Court.*—Hon. Thomas H. Bacon, Judge.

Reversed and remanded (*nisi*).

*Allison & Megown* and *Harrison & Mahan*, for appellants.

*James P. Wood*, for respondent.

Bond, J.—This is an action for money had and received for $1,526, brought against the testator of appellants upon the following facts: The respondent, Lucy A. Roland, on January 14, 1891, had an estate in

a tract of land of one hundred and sixty acres situate in Ralls county, Missouri, which was subject to a mortgage securing about $2,574, due the appellants' testator for money borrowed by the respondent to buy said land. The respondent executed a deed to Silas H. Hornback for the land for the consideration therein expressed of $4,100. The notary who took her acknowledgment testifies that, the next day after the preparation of the deed, he went to the respondent's house to get her signature. "I went, and when I got there, Mrs. Roland did not want to sign it. She first said she would not sign the deed, unless I would agree to receive $1,500 and deposit it in the bank to her credit. I don't know what that amount represented. There was a mortgage on the place held by Beshears. I told her I was not a safe hand to handle money and would not do it, and that, if she could not risk Mr. Roland with the money, she could not risk me, and that she need not sign the deed. She decided to sign, if Mr. Roland would receive the money and put it into the bank to her credit, that is, receive the difference between what they owed on the farm and what they were to get for it. I suppose she knew what she was getting for the place, because Roland was there with her. I did not explain it. She may have wanted me to receive a little more than the $1,500. I took her acknowledgment and took the deed back to my store and put my seal on it. I think Mr. Beshears had some suspicion that she would not sign the deed. Once before they tried to make a deed and failed. I don't know that I told Mr. Beshears how she came to sign the deed, but did say she asked me to put the money in the bank. I told him she agreed to sign the deed, if Roland would put the money in bank. That was the evening the seal was put on and the contract completed. It was before I parted with the deed. I never saw the money pass. I had no special reason

for not receiving the money. I did not want to carry it around with me. I did not seek to know anything about the transaction. I knew there was some pulling around, but didn't understand the thing fully. I didn't try to understand it. I was there to make the deed or not, just as they wanted. I was under the impression that Mrs. Roland would not get $1,500, and I thought she was expecting it. She had declined to sign the deed, until she received assurances that the money would be deposited in the bank to her credit. I did not want to induce her to do anything that she did not want to. I did not want to be responsible for the money being put in the bank." He further states on cross-examination: "I told him (Beshears) that Mrs. Roland signed the deed with the understanding that Roland was to put $1,500 in bank."

Ben Roland testified as follows: "I am the son of plaintiff, Lucy Roland. I did not know anything about the sale of the farm and making the deed until next day. There was a deed of trust on the farm for $2,400 or $2,500. The difference between the amount of the deed of trust and the amount the farm sold for was never turned over to Mrs. Roland. Mr. Beshears never said anything to my mother about paying her off in notes, but my father has. Mr. Beshears sent the notes to my mother by me, and he told me to give them to her. I offered to do so, but she would not have them; then I gave them to my father and he brought them to New London. My mother declined to receive the notes. Some of them are secured by mortgage, and some are not. Mr. Osterhaut signed the notes over to me on the request of my father and Mr Beshears."

The evidence tended to show that, after the cancelation of his notes for which he held a mortgage on the land, Mr. Beshears procured other notes of various parties amounting to the difference between his notes

and $3,900, and caused these notes to be indorsed to the respondent's son, and delivered them and the canceled notes due him (Beshears) to this son of the respondent to be carried to her.

The purchaser of the farm testified as follows: "I am acquainted with the Lucy Roland farm in Ralls county, Missouri, and also with the plaintiff. I also knew R. A. Beshears in his lifetime. I am the one who purchased the Lucy Roland farm from her, and the one to whom Mr. Hulse referred yesterday. I paid $3,900 for the farm, but I did not pay the money to anyone. I settled with Mr. Beshears for the farm. I gave notes amounting to $3,500 secured by deed of trust on the farm, and a $400 note secured by personal property. Both notes were made to R. A. Beshears. I never paid any part of the $3,900 to Mrs. Roland. I did not know that she was principal in the deed. Mr. Roland and I agreed as to the price, and he told me to arrange with Mr. Beshears. I did not know that there was a mortgage on the farm, or what it was. I made terms with Mr. Beshears according to the direction of Mr. Roland. He and I had agreed on the price. I did not pay any money for the farm; only gave secured notes to Mr. Beshears. Mr. Roland told me to arrange so with Mr. Beshears. There was no cash paid at all. I paid for the farm entirely in secured notes. The notes are solvent, and none of them are yet due."

The court gave judgment for the respondent for $1,526, and interest from the day of the filing of the petition until the date of the decree, August 23, 1892.

On this appeal it is urged, *first*, that the court erred in admitting in evidence the notes, mortgages, etc., sent by the appellant's testator to the respondent. We do not think there was any error in the reception of this evidence. Mr. Beshears had actual knowledge that the land in question belonged to the respondent,

and that she had consented to the sale of it only on *condition* that the excess of the purchase money over what she owed him (the amount secured by mortgage) should be put in bank to her credit. It was, therefore, competent to show that he sent her these notes as an indication, that he considered himself accountable to her for the difference between his claim as mortgagee and the purchase money. His first step was to arrange with the purchaser of the respondent's land terms of payment in contradiction of the consideration expressed in the deed, *i. e.*, permitting the vendee to pay $3,900 instead of $4,100. He next took a mortgage to himself from the vendee for $3,500 of this sum, and a solvent note for the remaining $400. Lastly, instead of the $1,526, which he knew was due to the respondent, he sent her ten notes amounting to $1,131.69, of which only $160.88 was solvent, the rest being worthless. The evidence of these notes was, therefore, competent to show his accountability.

Nor do we think, under the circumstances of this case, that there was any error in the action of the court in permitting the respondent to reopen her case, after its technical submission, for the purpose of offering the testimony of the vendee of the land. Such a ruling rests within the sound discretion of the trial court, and, while it ought never to be made to the detriment of the adversary party as to the presentation of his proofs, it should never be refused when substantial justice requires it, and safeguards are taken against unfairness or injury.

In the case at bar the court, after permitting the vendee of the land to be called upon motion of the respondent after her case had closed, made the follow-order: "Plaintiff, having withdrawn her former rest, now announces rest. The court then offers to defendant a reasonable time in which to produce his witnesses.

The defendant elects not to produce any testimony, but continues for reasons mentioned to object and except to the action of the court in reopening the case after the demurrer had been overruled." That appellants were not prejudiced by this order is apparent from its terms.

The third point made on this appeal is that the respondent sues on one cause of action, and recovered on another. If this assignment were well taken, it would be fatal to the respondent's case. We are satisfied from the allegations of the petition that a cause of action is stated against the appellants' testator for money had and received to the plaintiff's use. There is much redundance and surplusage in the averments of the petition, but these imperfections do not destroy its sufficiency as a pleading, nor deprive the trial judge of the power of granting any and all relief within the scope of the petition. We, therefore, decide this point against appellants.

We are satisfied that a judgment in this case should not have been given in excess of the amount which Beshears received as purchase money for the land, to-wit, $3,900. The respondent is not precluded from enforcing her rights to so much of the purchase money, as the vendee did not pay Beshears, in a suit against the vendee therefor, provided the facts justify it. But she cannot hold the estate of Beshears for any more than he received. It follows, therefore, that the respondent's recovery is excessive in amount by $200. If this is remitted in this court within ten days, the judgment will be affirmed for the residue; otherwise it will be reversed, and the cause remanded. In case of such *remittitur* the costs of this appeal will be equally divided. It is so ordered. All concur.